Justice ALITO
delivered the opinion of the Court.
We are asked to consider whether federal bankruptcy law precludes an unsecured creditor from recovering attorney’s fees authorized by a prepetition contract and incurred in postpetition litigation. The Court of Appeals for the Ninth Circuit held, based on a rule previously adopted by that court, that such fees are categorically prohibited — even where the contractual allocation of attorney’s fees would be enforceable under applicable nonbankruptcy law — to the extent the litigation involves issues of federal bankruptcy law. Because that rule finds no support in the Bankruptcy Code, we vacate and remand.
I
Respondent Pacific Gas and Electric Company (PG & E) filed a voluntary Chapter 11 bankruptcy petition in April 2001, 11 U.S.C. § 1101 et seq., and continued thereafter to operate its business as a “debtor in possession.” §§ 1107(a), 1108. The bankruptcy filing caught the attention of petitioner Travelers Casualty & Surety Company (Travelers), which had previously issued a $100 million surety bond on PG & E’s behalf to the California Department of Industrial Relations, guaranteeing PG & E’s payment of state workers’ compensation benefits to injured employees.[1] In connection with the bond, PG & E executed a series of indemnity agreements in favor of Travelers. The indemnity agreements provide that PG & E will be responsible for any loss Travelers might incur in connection with the bonds, including any attorney’s fees incurred in pursuing, protecting, or litigating Travelers’ rights in connection with those bonds.
Although no default occurred, Travelers asserted a claim in the bankruptcy action to protect itself in case PG & E defaulted on its workers’ compensation benefits at some point in the future, requiring Travelers to make payments under its bond. In response to Travelers’ claim, and with the knowledge and approval of the Bankruptcy Court, PG & E agreed to insert language into its reorganization plan and disclosure statement to protect Travelers’ right to indemnity and subrogation in the event of a default by PG & E.
Travelers claims, however, that PG & E then unilaterally altered the negotiated language in a way that substantially diminished the protection it had been seeking. According to Travelers, that development resulted in additional litigation, but Travelers and PG & E ultimately resolved the dispute by entering into a stipulation that was later approved by the Bankruptcy Court. In addition to accommodating Travelers’ substantive concerns, the stipulation stated that Travelers “may assert its *1203 claim for attorneys’ fees under the [i]ndemnity [ajgreements” (subject to PG & E’s right to object) as a general unsecured claim against PG & E. Brief for Petitioner 17.
Travelers subsequently filed an amended proof of claim seeking to recover the attorney’s fees it incurred in connection with PG & E’s bankruptcy proceedings. PG & E objected, arguing that Travelers could not recover attorney’s fees incurred while litigating issues of bankruptcy law.
The Bankruptcy Court agreed and rejected Travelers’ claim on that basis. App. to Pet. for Cert. 23a-25a. Travelers appealed that ruling to the District Court. The District Court affirmed, relying on In re Fobian, 951 F.2d 1149 (C.A.9 1991), which held that “where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney’s fees will not be awarded absent bad faith or harassment by the losing party,” id., at 1153. See App. to Pet. for Cert. 10a, 17a.
Travelers appealed again, and the United States Court of Appeals for the Ninth Circuit affirmed. 167 Fed.Appx. 593 (2006). The panel acknowledged that, in at least some circumstances, a “ ‘prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law....’” Id., at 594 (quoting In re Baroff, 105 F.3d 439, 441 (C.A.9 1997)). The panel nevertheless rejected Travelers’ claim based on the Fobian rule, which it cited for the proposition that “attorney fees are not recoverable in bankruptcy for litigating issues ‘peculiar to federal bankruptcy law.’ ” 167 Fed.Appx., at 594 (quoting Fobian, supra, at 1153). The panel explained that, because the fees claimed by Travelers were incurred litigating issues that were “governed entirely by federal bankruptcy law,” Travelers’ claim necessarily failed.[2] 167 Fed.Appx., at 594.
Travelers sought review in this Court, noting a conflict among the Courts of Appeals regarding the validity of the Fobian rule. Compare Fobian, supra, at 1153, with In re Shangra-La, Inc., 167 F.3d 843, 848-849 (C.A.4 1999). We granted certiorari to resolve that conflict, 549 U.S. -, 127 S.Ct. 377, 166 L.Ed.2d 265 (2006).
II
Under the American Rule, “the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys’ fee from the loser.” Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); see Hauenstein v. Lynham, 100 U.S. 483, 490-491, 25 L.Ed. 628 (1880); Arcambel v. Wiseman, 3 Dall. 306, 1 L.Ed. 613 (1796). This default rule can, of course, be overcome by statute. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). It can also be overcome by an “enforceable contract” allocating attorney’s fees. Ibid.
In a case governed by the Bankruptcy Act of 1898, we observed that “[t]he character of [a contractual] obligation to pay attorney’s fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property.” Security Mortgage Co. v. Powers, 278 U.S. 149, 154, 49 S.Ct. 84, 73 L.Ed. 236 (1928). Similarly, under the terms of the current Bankruptcy Code, it *1204 remains true that an otherwise enforceable contract allocating attorney’s fees (ie., one that is enforceable under substantive, non-bankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise. See 4 Collier on Bankruptcy ¶ 506.04[3][a], p. 506-118 (rev. 15th ed.2006) (hereinafter Collier).
This ease requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorney’s fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law. We conclude that it does not.
A
When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim — ie., a document providing proof of a “right to payment,” 11 U.S.C. § 101(5)(A) — against the debtor’s estate. Once a proof of claim has been filed, the court must determine whether the claim is “allowed” under § 502(a) of the Bankruptcy Code: “A claim or interest, proof of which is filed under section 501 ... is deemed allowed, unless a party in interest ... objects.”
But even where a party in interest objects, the court “shall allow” the claim “except to the extent that” the claim implicates any of the nine exceptions enumerated in § 502(b). Ibid. Those exceptions apply where the claim at issue is “unenforceable against the debtor ... under any agreement or applicable law,” § 502(b)(1); “is for unmatured interest,” § 502(b)(2); “is for [property tax that] exceeds the value of the [estate’s] interest” in the property, § 502(b)(3); “is for services of an insider or attorney of the debtor” and “exceeds the reasonable value of such services,” § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for certain “damages resulting from the termination” of a lease or employment contract, §§ 502(b)(6) and (7); “results from a reduction, due to late payment, in the amount of ... credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor,” § 502(b)(8); or was brought to the court’s attention through an untimely proof of claim, § 502(b)(9).
Travelers’ claim for attorney’s fees has nothing to do with property tax, child support or alimony, services provided by an attorney of the debtor, damages resulting from the termination of a lease or employment contract, or the late payment of any employment tax. See §§ 502(b)(2)-(8). Nor does it appear that the proof of claim was untimely. See § 502(b)(9). Thus, Travelers’ claim must be allowed under § 502(b) unless it is unenforceable within the meaning of § 502(b)(1).
B
Section 502(b)(1) disallows any claim that is “unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.” This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. See 4 Collier ¶ 502.03[2][b], at 502-22 (explaining that § 502(b)(1) is generally understood to “make available to the trustee any defense” available to the debtor “under applicable nonbankruptcy law” — ie., any defense that the debtor “could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor”).
This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that “[c]redi *1205 tors’ entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor’s obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.” Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See ibid.
Indeed, we have long recognized that the “ ‘basic federal rule’ in bankruptcy is that state law governs the substance of claims, Congress having ‘generally left the determination of property rights in the assets of a bankrupt’s estate to state law.’ ” Ibid. (quoting Butner v. United States, 440 U.S. 48, 57, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word “claim” — which the Code itself defines as a “right to payment,” 11 U.S.C. § 101(5)(A) — it is usually referring to a right to payment recognized under state law. As we stated in Butner, “[pjroperty interests are created and defined by state law,” and “[ujnless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.” 440 U.S., at 55, 99 S.Ct. 914; accord, Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) (“What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law”).
C
In rejecting Travelers’ claim for contractual attorney’s fees, the Court of Appeals did not conclude that the claim was “unenforceable” under § 502(b)(1) as a matter of applicable nonbankruptcy law. Nor did it conclude that Travelers’ claim was rendered unenforceable by any provision of the Bankruptcy Code. To the contrary, the court acknowledged that, in at least some circumstances, a “ ‘prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law....’” 167 Fed.Appx., at 594 (quoting Baroff, 105 F.3d, at 441).
The court nevertheless rejected Travelers’ claim based solely on a rule of that court’s own creation — the so-called Fobian rule — which dictates that “attorney fees are not recoverable in bankruptcy for litigating issues ‘peculiar to federal bankruptcy law.’ ” 167 Fed.Appx., at 594 (quoting Fobian, 951 F.2d, at 1153). The court explained that, because the fees claimed by Travelers were incurred litigating issues that were “governed entirely by federal bankruptcy law,” 167 Fed.Appx., at 594, Travelers’ claim necessarily failed.
The Fobian rule finds no support in the Bankruptcy Code, either in § 502 or elsewhere. In Fobian, the court did not identify any provision of the Bankruptcy Code as providing support for the new rule. See 951 F.2d, at 1153. Instead, the court cited three of its own prior decisions, In re Johnson, 756 F.2d 738 (1985); In re Coast Trading Co., 744 F.2d 686 (1984); and In re Fulwiler, 624 F.2d 908 (C A.9 1980) (per curiam). Significantly, in none of those cases did the court identify any basis for disallowing a contractual claim for attorney’s fees incurred litigating issues of federal bankruptcy law. Nor did the court have occasion to do so; in each of those cases, the claim for attorney’s fees failed as a matter of state law. See Johnson, supra, at 741-742; Coast Trading, supra, at 693; Fulwiler, supra, at 910.[3]
*1206 The absence of textual support is fatal for the Fobian rule. Consistent with our prior statements regarding creditors’ entitlements in bankruptcy, see, e.g., Raleigh, 530 U.S., at 20, 120 S.Ct. 1951, we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See 11 U.S.C. § 502(b). Neither the court below nor PG & E has offered any reason why the fact that the attorney’s fees in this case were incurred litigating issues of federal bankruptcy law overcomes that presumption.
Section 502(b)(4) is instructive on this point. That provision expressly disallows claims for a particular category of attorney’s fees — those “for services of an ... attorney of the debtor,” to the extent the claimed fees “excee[d] the reasonable value of such services.” The existence of that provision suggests that, in its absence, a claim for such fees would be allowed in bankruptcy to the extent enforceable under state law. The absence of an analogous provision excluding the category of fees covered by the Fobian rule likewise suggests that the Code does not categorically disallow them. See 4 Collier 11506.04[3][a], at 506-118 (concluding that Fobian “inverts the proper analysis” by allowing attorney’s fees only where they are expressly authorized by the Bankruptcy Code, and explaining that “a claim for attorney’s fees arising in the context of litigating bankruptcy issues must be allowed if valid under applicable state law”).
Congress, of course, has the power to amend the Bankruptcy Code by adding a provision expressly disallowing claims for attorney’s fees incurred by creditors in the litigation of bankruptcy issues. But because no such provision exists, the Bankruptcy Code provides no basis for disallowing Travelers’ claim on the grounds stated by the Ninth Circuit.
As we explained in FCC v. NextWave Personal Communications Inc., 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003), “where Congress has intended to provide ... exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly.” Id., at 302, 123 S.Ct. 832. Here, the Bankruptcy Code does not “clearly and expressly” compel courts to follow the Fobian rule; on the contrary, the Code says nothing about unsecured claims for contractual attorney’s fees incurred while litigating issues of bankruptcy law. In light of the broad, permissive scope of § 502(b)(1), and our prior recognition that “the character of [a contractual] obligation to pay attorney’s fees presents no obstacle to enforcing it in bankruptcy,” it necessarily follows that the Fobian rule cannot stand. Security Mortgage, 278 U.S., at 154, 49 S.Ct. 84; see Cohen v. de la Cruz, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (“We ... ‘will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a depar *1207 ture’ ” (quoting Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990))).
Ill
PG & E makes no effort to defend the Fobian rule. See Tr. of Oral Arg. 28 (conceding that PG & E does not defend the Fobian rule, and acknowledging that “[t]he Fobian rule is wrong ... as to the distinction that it draws between State law and Federal litigation”). Instead, PG & E argues that § 506(b) categorically disallows unsecured claims for contractual attorney’s fees and — noting that Travelers’ claim is unsecured — asks us to affirm on that basis. Section 506(b) provides as follows:
“To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.” 11 U.S.C.A. § 506(b) (Supp.2006).
According to PG & E, this provision authorizes claims for contractual attorney’s fees to the extent the creditor is oversecured, but disallows such claims to the extent the creditor is either not oversecured or (like Travelers) completely unsecured. This reading of the Code, PG & E argues, “is not a matter of negative implication, but of explicit negation.” Brief for Respondent 18. PG & E also argues that the structure and purpose of the Bankruptcy Code, examined against the backdrop of pre-Code bankruptcy law, confirm that Congress did not intend to allow unsecured creditors to recover attorney’s fees. See id., at 25-38.
PG & E did not raise these arguments below. Consequently, none of the lower courts had occasion to address them. Nor were these arguments presented in PG & E’s brief in opposition to certiorari. PG & E nevertheless insists that we should address these arguments as though they were “fairly included” within the question presented in Travelers’ petition for certiorari. See id., at 41. That contention appears to be premised on the theory that “the Fobian rule reaches the correct conclusion in this case,” but “doesn’t go far enough in ... preventing creditors from requiring other creditors to pay for their attorneys’ fees.” Tr. of Oral Arg. 25.
We are not persuaded. We granted certiorari to resolve a conflict among the lower courts regarding the Fobian rule, which is analytically distinct from, and fundamentally at odds with, PG & E’s reading of § 506(b).[4]
In any event, we ordinarily do not consider claims that were neither raised nor addressed below, Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 168-169, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), and PG & E has failed to identify any circumstances that would warrant an exception to that rule in this case. We therefore will not consider these arguments.[5]
Accordingly, we express no opinion with regard to whether, following the demise of *1208 the Fobian rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers’ claim for attorney’s fees. We conclude only that the Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred litigating issues of bankruptcy law.
The judgment of the United States Court of Appeals for the Ninth Circuit is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

. California law required PG & E to provide workers’ compensation benefits for its employees by either (1) purchasing workers' compensation insurance from a licensed provider of such insurance or (2) adopting a plan, with the State's approval, to self-insure. PG & E chose the latter option, and was therefore required to post security with the State to ensure ongoing payment of mandatory workers’ compensation benefits. See Cal. Lab.Code Ann. §§ 3700, 3701 (West 2003). Travelers posted the required security by issuing a bond on PG & E’s behalf. The bond makes Travelers liable, up to $100 million, for workers' compensation benefits in the event of a default by PG & E.

. The Court of Appeals incorporated by reference the reasoning employed in In re DeRoche, 434 F.3d 1188 (C.A.9 2006), which was decided by the same panel that decided this case. 167 Fed.Appx., at 593. Although the DeRoche opinion is longer than its counterpart in this case, it adds very little to the panel’s explanation of the Fobian rule. See DeRoche, supra, at 1190-1192.

. In Johnson, the debtor sought attorney's fees after the creditor unsuccessfully requested relief from the automatic stay under 11 U.S.C. § 362(d)(1). The debtor acknowledged that the contract between the parties entitled only the creditor to attorney’s fees, but the debtor claimed that a California statute extended that entitlement to both parties. The court rejected that argument, noting that the statute applied only in the context of an " ‘action on a contract,' ” and concluding that a request for relief from an automatic stay could not be considered an action on a contract. 756 F.2d, at 741-742. Both Coast Trading and Fulwiler involved claims for attorney’s fees based on an Oregon statute similar to the statute at issue in Johnson; the court found the statute inapplicable in both cases. Coast Trading, 744 F.2d, at 693; Fulwiler, 624 F.2d, at 909-910.

. PG & E’s new reading of the Code would prohibit all unsecured creditors from recovering contractual, postpetition attorney's fees in bankruptcy proceedings — even if those fees were incurred while litigating issues of state law. See Brief for Respondent 17-19. The Fobian rule, by contrast, would allow such a recovery- — even by unsecured creditors — so long as the litigation resulting in the claimed fees did not involve "issues peculiar to federal bankruptcy law.” See In re Fobian, 951 F.2d 1149, 1153 (C.A.9 1991).

. For similar reasons, we will not address PG & E’s argument that Travelers’ claim should be denied based on the theory that the fees at *1208 issue were incurred in connection with activities that were not reasonably necessary to preserve Travelers’ rights and, alternatively, were not authorized by Travelers’ contract with PG & E. See Brief for Respondent 42-49. This argument was not addressed below, was not raised in PG & E’s brief in opposition to certiorari, and bears no relation to the question presented. See this Court's Rule 14.1(a) ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court”).